IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **HENRY YOUNG, SR &** : | |
| **CHRISTINE YOUNG** : | |
| : | |
| Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | FILE NO. ___5:13-CV-362___ |
| : | |
| **CITY OF MACON, GEORGIA &** : | |
| **SERGEANT JEREMY MALONE,** : | |
| : | |
| **Defendants**. : | |

# COMPLAINT

**COME NOW**, Plaintiffs **Henry Young, Sr. and Christine Young** and file this civil action for monetary damages against the **City of Macon, Georgia** and **Sergeant Jeremy Malone,** as follows:

## JURISDICTION AND VENUE

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and alleging violations of the Fourth Amendment to the United States Constitution, made applicable to state and local governments through the Due Process Fourteenth Amendment to the United States Constitution. Plaintiffs also assert state law claims arising out of the same nucleus of

–1–

operative facts.

2. This Court has original jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1367.

3. Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), venue is proper in this District and Division as at least one of the defendants resides therein and the cause of action arose therein.

## PARTIES

4. Henry Young, Sr. and Christine Young are citizens of the State of Georgia.

5. Defendant City of Macon, Georgia ("Macon"), is a municipality organized pursuant to the Georgia Constitution and is subject to the jurisdiction of this Court. Macon may be served with summons and process by and through Robert Reichert, Mayor of the City of Macon, 700 Poplar Street, Macon, Georgia 31201.

6. Macon, acting pursuant to its governmental authority, operates the Macon Police Department (MPD).

7. Upon information and belief, Macon has purchased liability insurance to protect Macon and the employees of the MPD for damages arising from acts or omissions of MPD's law enforcement officials committed during the course and scope of their employment on behalf of MPD.

8. Macon has waived sovereign immunity up to the limits of the liability insurance described in Paragraph 7 herein and may thus be held liable for the acts and omissions of MPD's law enforcement officials under a theory of respondent superior liability as to Plaintiffs' state law claims.

9. Plaintiffs timely served an Ante Litem notice upon the Mayor of the City of Macon and the members of the city council on or about October 26, 2011.

10. Defendant **Sergeant Jeremy Malone**, ("Malone"), is a citizen of the State of Georgia and is subject to the personal jurisdiction of this Court. Malone may be personally served with the Complaint and summons at the Macon Police Department, Southern Trust Building, 682 Cherry Street, Suite 200, Macon, Georgia 31201.

11. At all times relevant to this action, Malone was acting under color of state law and within the scope of his discretionary functions as duly sworn,

certified law enforcement officer employed by the Macon Police Department.

## FACTUAL ALLEGATIONS

12. Henry Young, Sr. is a 70-year-old African-American male.

13. On September 25, 2011, Mr. Young weighed approximately 130 pounds and stood 5'8" tall.

14. Christine Young is a 68-year-old African-American female.

15. On September 25, 2011, Ms. Young weighed approximately 210 and stood 5'2" tall.

16. On September 25, 2011, Plaintiffs and their 53-year-old son, Henry Young, Jr., resided together at 335 Spikes Street in Macon.

17. On September 25, 2011 at approximately 8:30 in the evening, Malone responded to a 512 Crisp Street in reference to a robbery.

18. Malone checked the area for potential suspects and located a black male wearing a black shirt and blue jeans walking down Spikes Street away from the incident location and towards the residence he shared with the Plaintiffs.

19. Malone approached the black male who identified himself as Henry Young, Jr.

20. Malone conducted a "Terry" stop on Henry Young, Jr. directly in front of the residence he shared with the Plaintiffs.

21. Henry Young, Jr. appeared nervous. He was breathing rapidly, looking around and constantly fidgeting.

22. Henry Young, Jr. denied possessing any weapons.

23. Malone nonetheless searched Henry Young, Jr., who did not stand still while Malone tried to search him.

24. Malone placed Henry Young, Jr. in handcuffs for Malone's "safety and in reference to the robbery."

25. Malone felt a hard object in Henry Young, Jr.'s pocket, reached his hand inside and pulled out a wad of paper containing what Malone believed to be crack cocaine.

26. As Malone went to check what was inside the wad of paper, Henry Young, Jr. – who remained handcuffed behind his back – ran away down Spikes Street.

27. After a short foot chase, Malone caught Henry Young, Jr. and brought him back to his police car.

28. When they got to Malone's police car, Henry Young, Jr. somehow escaped again, ran around Malone's car, grabbed the wad of paper with his mouth and began chewing it.

29. Malone gave Henry Young, Jr. verbal commands to spit out the wad of paper, but Henry Young, Jr. refused to obey his commands.

30. Henry Young, Jr. did not threaten Malone with violence or act violently towards Malone.

31. Malone then used "hard-hand techniques" against Henry Young, Jr., punching him with his closed fist fifteen times in his abdominal area.

32. Henry Young, Jr. did not spit out the wad of paper, so Malone escalated his assault by kneeing Henry Young, Jr. five times in his abdominal area.

33. Henry Young, Jr. did not spit out the wad of paper, so Malone sprayed three one second bursts of "pepper spray" in Henry Young, Jr.'s face.

34. Henry Young, Jr. began choking. He ran about ten feet and spit out the wad of paper.

35. Malone separated Henry Young, Jr. from the wad of paper.

36. Three other officers were present and assisting Malone.

37. One officer placed Henry Young, Jr. in a chokehold while two other officers stood by.

38. Malone beat Henry Young, Jr. – who was handcuffed and in custody - by striking him with a closed fist fifteen times, kneeing him five times and spraying him three times with pepper spray.

39. Henry Young Sr. and Christine Young came outside onto their front porch of their home at 355 Spikes Street while these events were unfolding.

40. The Plaintiffs witnessed Malone's brutal assault on Henry Young, Jr.

41. The Plaintiffs were horrified by Malone's actions.

42. Henry Young, Sr. walked out between two cars that were parked on their front lawn. He stood on his own property and approximately 35 feet away from the location where Malone and the other officers were assaulting Henry Young, Jr.

43. Malone told Henry Young, Sr. not to interfere with his unlawful assault upon Henry Young, Jr.

44. Henry Young, Sr. said he was not interfering and did not intend to interfere; he asked Malone what his son had done to justify such a savage beating.

45. Malone responded that Henry Young, Jr. was trying to swallow evidence. He told Henry Young, Sr. that he was going to hit Henry Young, Jr. until he spat out the evidence.

46. Henry Young, Sr. did not rush towards Malone.

47. Henry Young, Sr. did not threaten or offer any violence to Malone.

48. Henry Young, Sr. was not obstructing Malone from the lawful performance of his duties.

49. Henry Young, Sr. was exercising his rights as a citizen to criticize law enforcement officers like Malone when their conduct in the line of duty offends that citizen's sense of justice.

50. Malone did not give Henry Young, Sr. any verbal commands; rather he quickly moved towards Henry Young, Sr. – a 70-year-old man weighing

120 pounds – and struck him in the chest with his open hand.

51. Henry Young, Sr. fell backward and, as he regained his balance, Malone sprayed Henry Young, Sr. in the face with his pepper spray.

52. Henry Young, Sr. retreated to his house.

53. Christine Young had stepped out onto the porch.

54. Henry Young, Sr. walked past her into the house. She saw that his face was covered in pepper spray.

55. Ms. Young stepped off the porch and walked down her driveway towards the street where Malone and the other officers were beating Henry Young, Jr.

56. Ms. Young stopped at the edge of her driveway. She asked the officers why they were harming her son.

57. The officers responded that she should go back in her house.

58. Ms. Young said, "What are you all doing to him, what did he do?"

59. Malone responded, "He committed a felony and we are taking him to jail."

60. Ms. Young that there was no need to beat him up.

61. Malone told Ms. Young to go back in the house.

62. Ms. Young said she was not going back in her house, but said she would back up so that she was further away from the officers and Henry Young, Jr.

63. Ms. Young did not rush towards Malone.

64. Ms. Young did not threaten or offer any violence to Malone.

65. Ms. Young was not obstructing Malone from the lawful performance of his duties.

66. Ms. Young was exercising his rights as a citizen to criticize law enforcement officers like Malone when their conduct in the line of duty offends that citizen's sense of justice.

67. Without warning, Malone sprayed Ms. Young in the face with pepper spray.

68. Acting at Malone's direction, a second officer approached Ms. Young and commanded that she put her hands behind her back.

69. Ms. Young refused because she had done nothing wrong other than to speak out against Malone's brutal and unnecessary treatment of her son and husband.

70. Malone walked over and grabbed Ms. Young's arms. He forced her arms behind her back, handcuffed her and put her in the back of his patrol car.

71. Henry Young, Sr. was standing on his porch when Malone arrested his wife without probable cause.

72. He did not leave the front porch because he feared that Malone would hurt him again.

73. Malone walked up to the front porch and ordered that Henry Young, Sr. put his hands behind his back.

74. Henry Young, Sr. refused because he had done nothing wrong other than to speak out against Malone's brutal and unnecessary treatment of his son and wife.

75. Malone grabbed Henry Young, Sr.'s arms and forced them behind his back. Malone handcuffed Henry Young, Sr. and put him in the back of another police car.

76. Throughout the incident, at least four officers were present on the scene and Henry Young, Jr. was in handcuffs.

77. Given the presence of other officers on the scene, no objectively reasonable

police officer in Malone's position would have believed that any force at all would be justified in response to Henry Young, Sr. and Ms. Young's verbal protestations.

78. No objectively reasonable officer in Malone's position would have believed that a slight, elderly man like Henry Young, Sr. presented a threat to his safety sufficient to justify the use of hard hand techniques and pepper spray.

79. No objectively reasonable officer in Malone's position would have believed that a diminutive 68-year-old woman presented a threat to his safety sufficient to justify the use of pepper spray.

80. Every objectively reasonable officer in Malone's position would have known that use of any force against a citizen who was verbally protesting law enforcement activity would constitute excessive force.

81. No objectively reasonable police officer in Malone's position would have believed that probable cause existed to arrest Henry Young, Sr. for obstruction simply because he expressed his displeasure with Malone's treatment of his son.

82. No objectively reasonable police officer in Malone's position would have believed that probable cause existed to arrest Ms. Young for obstruction simply because she expressed her displeasure with Malone's treatment of her son and her husband.

83. Malone transported Henry Young, Sr. to the Bibb County Detention Center; however, that facility refused to accept Henry Young, Sr. because his blood pressure was well outside normal range.

84. Malone drove Henry Young, Sr. to Medical Center of Central Georgia and dropped him off.

85. Henry Young, Sr. had been experiencing chest pains and shortness of breath every since Malone sprayed him in the face with pepper spray.

86. Henry Young, Sr. was evaluated in the emergency room and told he seemed ok.  He was released without further evaluation.

87. Another officer transported Christine Young to the detention center.  Ms. Young was booked in and placed in a holding cell.

88. Henry Young, Sr. arranged for a bond for Christine Young.

89. Ms. Young bonded out after spending approximately two hours in

custody.

90. After Ms. Young bonded out, Henry Young, Sr. told her that he was not feeling very well at all.

91. Ms. Young took Henry Young, Sr. to the Coliseum Medical Center emergency room.

92. Henry Young, Sr. was admitted to Coliseum Medical Centers after an evaluation upon admission revealed elevated troponin suggestive of non-ST-elevation myocardial infarction.

93. Henry Young, Sr. remained hospitalized for approximately a day and a half, received treatment to stabilize his blood pressure and heart, including diagnostic testing to rule out additional complications.

94. When Henry Young, Sr. was released from the hospital, he had no way home.

95. On June 3, 2013, Henry Young, Sr. went to the Sheriff's Office and ordered a copy of his criminal history.

96. Henry Young, Sr. was told that he had an outstanding arrest warrant for misdemeanor obstruction arising from this incident.

97. Henry Young, Sr. was arrested, booked in and placed in a holding cell.

98. Henry Young, Sr. bonded out approximately four hours later.

99. As a direct and proximate result of Malone's conduct, Plaintiffs suffered physical and emotional injuries entitling Plaintiffs to an award of monetary damages for actual and compensatory damages.

**COUNT I: EXCESSIVE FORCE**
(4th Amendment & 42 U.S.C. § 1983)

100. Plaintiffs incorporates the above numbered paragraphs above that deal directly with the acts of Malone at the scene of Henry Young, Jr.'s arrest as if fully set forth herein.

101. At all time relevant to this action, Malone was acting under color of state law and within the scope of his employment with the Macon Police Department.

102. Malone used excessive force against Plaintiffs in violation of their civil rights as set forth in the Fourth Amendment to the United States Constitution.

103. At all times relevant to this action, a reasonable officer in Malone's

position would have known that his actions violated clearly established law under the Fourth Amendment to the United States Constitution.

104. As a direct and proximate result of individual Defendant's malicious use of excessive force, Plaintiffs suffered physical injuries, economic harm and pain for which they may recover monetary damages pursuant to 42 U.S.C. § 1981(a).

105. Plaintiffs is entitled to recover economic and compensatory damages for the constitutional deprivations suffered at the hands of Malone in an amount to be determined by the enlightened conscience of the jury.

106. Malone's actions were intentional, willful, malicious and oppressive, thereby entitling Plaintiffs to an award of aggravated, exemplary and punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT II – ASSAULT & BATTERY
(O.C.G.A. § 51-1-13 & 51-1-14)

107. Plaintiffs incorporates ¶¶ 5-9 relating to Macon's waiver of sovereign immunity through the purchase of liability insurance as if fully set forth herein.

108. At all times relevant to this action, Malone was acting under color of state law and within the scope of his employment with the MPD.

109. Malone was engaged in the performance of discretionary duties during the incident involving Plaintiffs.

110. Defendant Malone's actions as set forth more specifically herein constitute an Assault and Battery against Plaintiffs committed with actual malice and/or intent to injure Plaintiffs.

111. Macon is vicariously liable for the tortious acts of Malone under a theory of respondent superior.

112. As a direct and proximate result of tortious acts of Malone, Plaintiffs suffered severe physical injuries, economic harm and pain for which she may recover monetary damages in an amount to be determined by the enlightened conscience of the jury.

113. Malone acted with actual malice and the intent to injure Plaintiffs, thereby entitling Plaintiffs to an award of aggravated, exemplary and punitive damages from the individual Defendant **only** in an amount to be determined by the enlightened conscience of the jury.

### COUNT V – NEGLIGENT TRAINING
(O.C.G.A. § 51-1-1 et seq.)

114. Plaintiffs incorporates ¶¶ 6-9 relating to Macon's waiver of sovereign immunity through the purchase of liability insurance as if fully set forth herein.

115. At all times relevant to this action, Malone was acting under color of state law and within the scope of his employment with the MPD.

116. Malone engaged in the performance of discretionary duties during the incident involving Plaintiffs.

117. Malone had a duty to respect the rights of citizens to verbally oppose police conduct.

118. Macon negligently failed to train and supervise Malone as to use of force in circumstances involving citizens who verbally oppose police conduct.

119. As a direct and proximate result of tortious acts and omissions of Macon, Plaintiffs suffered severe physical injuries, economic harm and pain for which they may recover monetary damages in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A)   That special damages be awarded to compensate Plaintiffs for their economic injuries as a consequence of the Defendants' violations of their rights in an amount to be determined by the enlightened conscious of the jury;

B)   That compensatory damages be awarded against the Defendants to compensate the Plaintiffs for their pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation, as a consequence of the Defendants' actions in an amount to be determined by the enlightened conscious of the jury;

C)   That punitive damages be awarded against the Malone *only* in an amount to be determined by the enlighten conscious of the jury to deter him and others from similar misconduct in the future;

D)	That a trial by jury be had on all issues wherein a jury trial is permitted under law;

E)	That attorney's fees and expenses of litigation be awarded as authorized under 42 U.S.C. §1988 and as authorized under Georgia law;

F)	That prejudgment interest be awarded; and,

G)	That the Court award such other equitable or monetary relief as the Court deems just and proper.

This  24th   Day of  September , 2013.

                                            Respectfully submitted,

                                            */s/William J. Atkins*
                                            WILLIAM J. ATKINS
                                            State Bar No. 027060

**ATKINS & FIFE, LLC**
6400 Powers Ferry Road, Suite 355
Atlanta, Georgia 30339
Telephone: (404)969-4130
bill@atkinsfife.com